UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL S. MAHONEY,

    Plaintiff,

v.                                                                        Hon. Sally J. Berens

COMMISSIONER OF SOCIAL SECURITY,         Case No. 1:19-cv-00686

    Defendant.
_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security that Plaintiff was entitled to Disability Insurance Benefits (DIB) under Title II of the Social Security Act from July 1, 1989, through January 5, 2017, but not thereafter.  The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.  Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.  For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision finding that Plaintiff is no longer disabled is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making his

decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and his findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was initially determined to be disabled on November 1, 1989 (with an onset date of July 1, 1989). (PageID.33.) On January 5, 2017, Plaintiff was determined no longer to be disabled. (*Id.*) Plaintiff appealed, and ALJ Lawrence Blatnik conducted a hearing on April 12,

2018. (*Id.*) A supplemental hearing was held on August 14, 2018. (*Id.*) Plaintiff was present and testified at both hearings.

On October 3, 2018, the ALJ issued a written decision finding that, because Plaintiff had a sufficient residual functional capacity to perform jobs that existed in significant numbers in the national economy, his disability ended on January 5, 2017. Plaintiff requested a review by the Appeals Council. The Appeals Council denied Plaintiff's request for review on June 20, 2019. Thus, the ALJ's decision became the Commissioner's final decision. 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff initiated this civil action for judicial review on August 26, 2019.

## **ANALYSIS OF THE ALJ'S DECISION**

The Social Security Act provides that disability benefits may be terminated if "the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling." 42 U.S.C. § 423(f). Termination of benefits must be supported by substantial evidence that (1) there has been medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (2) the individual is now able to engage in substantial gainful activity. *See* 42 U.S.C. § 423(f)(1)(A)–(B); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

The social security regulations articulate an eight-step sequential process by which determinations of continuing disability are made. *See* 20 C.F.R. §§ 404.1594, 416.994. If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. The steps of this sequential process are as follow:

(1) Is the individual engaging in substantial gainful activity?

(2) Does the individual have an impairment of combination of impairments which meets or equals in severity an impairment identified in the Listing of Impairments?

3

    (3)       Has the individual experienced a medical improvement?

    (4)       Is the improvement related to the individual's ability to work (i.e., has there been an increase in the individual's residual functional capacity ("RFC") based on the impairment(s) present at the time of the most recent favorable medical determination)?

    (5)       If the individual has either not experienced a medical improvement or any such improvement is unrelated to his ability to perform work, do any of the exceptions to the medical improvement standard apply?

    (6)       Does the individual suffer from a severe impairment or combination of impairments?

    (7)       Can the individual perform his past relevant work?

    (8)       Can the individual perform other work?

20 C.F.R. § 404.1594(f).

When the Commissioner evaluates whether a claimant continues to qualify for benefits, the claimant is not entitled to a presumption of continuing disability. *See Cutlip*, 25 F.3d at 286. Rather, the decision whether to terminate benefits must "be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition." *Id.* However, the Commissioner has the burden of proof that a claimant has experienced medical improvement which renders him capable of performing substantial gainful activity. *See, e.g.*, *Kennedy v. Astrue*, 247 F. App'x 761, 764–65 (6th Cir. 2007); *Couch v. Comm'r of Soc. Sec.*, No. 1:11-cv-174, 2012 WL 394878, at *10 (S.D. Ohio Feb. 7, 2012).

The ALJ determined that the most recent favorable medical decision finding the Plaintiff disabled was dated November 1, 1989 (the "comparison point decision" or "CPD"). (PageID.34.) At that time, Plaintiff had a schizoaffective disorder and a bipolar disorder. (*Id.*) Since January 5, 2017, the ALJ determined that Plaintiff had the following medically determinable impairments: obesity, chronic obstructive pulmonary disease ("COPD"), and hypertension. (PageID.35.) The ALJ found that Plaintiff did not have an impairment or combination impairments that met or

4

medically equaled any impairment identified in the Listing of Impairments set forth in 20 C.F.R., Part 404, Subpart P, Appendix 1. (*Id.*)

The ALJ determined that the medical evidence supported a finding that, by January 5, 2017, there had been a decrease in the medical severity of the impairments present at the time of the CPD, to the point where those impairments (schizoaffective disorder and bipolar disorder) were non-severe. (PageID.37.) The improvement in his mental impairments with medical treatment had allowed him to finish law school and work as a lawyer. (*Id.*) The ALJ found that Plaintiff's impairments of obesity, COPD, and depression caused more than minimal limitations on his ability to perform basic work activities, and so he continued to have a severe impairment or combination of impairments. (PageID.38.)

With respect to Plaintiff's residual functional capacity, the ALJ determined that his medical improvement had resulted in a less restrictive RFC. (PageID.37-38.) Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.994(b)(5)(v). The ALJ found that he could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; and he could sit, stand, and walk for six hours. (PageID.38.) He could never climb ladders, ropes or scaffolds, but could occasionally balance, stoop, kneel, crawl, and climb ramps and stairs. (*Id.*) The ALJ also found that he could perform simple, routine, and semi-skilled tasks on a sustained basis. (*Id.*)

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a

claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts to determine whether there exist a significant number of jobs a particular claimant can perform, his limitations notwithstanding. That was the case here, as the ALJ questioned a vocational expert.

The vocational expert reported that there existed approximately 957,000 jobs nationally that an individual with Plaintiff's RFC could perform, those limitations notwithstanding. This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

## I. Applicability of Section 1619

Plaintiff argues that the ALJ failed to consider that he was continuing to suffer from a disability and that he continued to be disabled for purposes of Section 1619 (42 U.S.C. § 1382h), which he says would allow him to continue to qualify for Medicaid. (PageID.718.) As a matter of first impression, it appears he misconstrues that section. Section 1619(a)(1) states that

> any individual who was determined to be an eligible individual…by reason of being under a disability and was eligible to receive benefits under section 1382…for a month and whose earnings in a subsequent month exceed the amount designated by the Commissioner of Social Security ordinarily to represent substantial gainful activity shall qualify for a monthly benefit under this subsection for such subsequent month

in a certain amount "for so long as—(A) such individual continues to have the disabling physical or mental impairment on the basis of which such individual was found to be under a disability…."

Plaintiff argues that, because "the condition underlying Plaintiff's earlier claims of disability remain," and the ALJ found him not disabled "simply because the record evidence indicates the Plaintiff 'has worked at substantial gainful activity levels,'" he should continue to qualify for Medicaid under Section 1619. (PageID.719, 749.)

However, as the Commissioner notes, the ALJ did not merely find that Plaintiff was ineligible for benefits because he had substantial gainful activity. Rather, the ALJ found that the schizoaffective disorder and bipolar disorder that were the basis for his original disability determination had improved with medical treatment, resulting in an improvement in his RFC that renders him no longer disabled. (PageID.37-38.) Therefore, he does not meet the requirement that he "continues to have the disabling physical or mental impairment on the basis of which [he] was found to be under a disability." Section 1619(a)(1).

In any case, in supplemental briefing (PageID.758) and at a status conference held on August 12, 2020, Plaintiff conceded that the issue is now moot because his earnings now exceed the State of Michigan Medicaid program limits.

**II.  Treating Physician's Findings**

Next, Plaintiff argues that the ALJ erred in finding that Dr. Waldron's findings were inconsistent with the record as a whole and giving little weight to her findings and those of Dr. R. Scott Lazzara, MD, the consulting examiner (CE). (PageID.721.)

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) the

7

opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). That deference is appropriate, however, only where the opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citation omitted). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must give "good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (citation omitted). Notably, a treating physician's opinion on the ultimate issue, whether a claimant is disabled, need not be given any weight because that determination of the ultimate issue is reserved for the Commissioner. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009); *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 979, 980 n.1 (6th Cir. 2011).

Plaintiff argues that Dr. Waldron treated him for over a decade, and her findings "are entirely consistent with the record and with CE findings." (PageID.721.) Specifically, he takes issue with the ALJ's statement that Dr. Waldron's assessments were not "well supported by the record evidence, which indicates that the claimant has worked at substantial gainful activity levels as a self-employed attorney for several years, and involve[] an issue reserved for the

Commissioner." (PageID.721; PageID.39.) He argues that Dr. Waldron's January 19, 2015 progress notes indicate that he was "positive for malaise/fatigue" and "dysphoric mood." (PageID.747, citing PageID.632.) He also notes that a July 11, 2016 progress note indicated another "severe episode of a recurrent major depressive disorder." (PageID.747, citing PageID.621.) In both instances, however, Dr. Waldron indicated that he had a "normal mood and affect," and normal behavior. (PageID.633, 648.) Moreover, there was no detail for these notations and no ordered treatment plan for mental health issues. Instead, both visits appeared to relate primarily to Plaintiff's hypertension and hyperlipidemia.

Although the July 11, 2016 summary notes a primary diagnosis of "severe episode of recurrent major depressive disorder, without psychotic features," there is little discussion of that diagnosis. (PageID.649.) Dr. Waldron does state that

> Patient was talking to social security and they do not believe that I said he could not go back to work at a usual job. It is true that he cannot go back to work at a usual job. He has to work very intermittent hours at his own schedule due to major depression and his chronic back pain. He has not been able to get any results from antidepressants.

(PageID.647.) There is no discussion of further treatment or of any recent attempts at antidepressant usage. (*Id.*) Similarly, in a letter dated August 7, 2018, Dr. Waldron states that Plaintiff "has had severe depression for most of his life and he has been extremely resistant to treatment." (PageID.26.) She notes that she has "serious doubts that he would be able to function in a normal structured competitive work environment." (*Id.*) She further noted that he was "currently self-employed and works a very flexible schedule that is determined by his ability to work on any given day." (*Id.*)

> The ALJ gave
>
> little weight to the July 2016 assessment of treating physician Kathleen Waldron, D.O., or the supplemental assessment of Dr. Waldron dated August 7, 2018, since they are not well-supported by the record evidence, which indicates that claimant

9

>has worked at substantial gainful activity levels as a self-employed attorney for several years, and involves an issue reserved to the Commissioner.

(PageID.39.) The ALJ was correct that the conclusion regarding the ultimate issue of disability is not entitled to weight, as the determination of that ultimate issue is reserved to the Commissioner. *Allen*, 561 F.3d at 652; *Sims*, 406 F. App'x at 979, 980 n.1. Moreover, Plaintiff's own statements that he works up to 12-hour days and has one or two days per week when he leaves early to go home contradict the opinion that he needs to work very intermittent hours at his own schedule. (PageID.39, 61.)

Plaintiff argues that the ALJ rejected Dr. Waldron's opinion "simply because the record evidence indicates that Plaintiff 'has worked at substantial gainful activity levels.'" (PageID.721.) While the ALJ cites Plaintiff's substantial gainful activity in giving little weight to Dr. Waldron's opinion, he also notes that "[a]s of August 5, 2017, the claimant has had no urgent care or emergency room visits due to his psychological or physical impairments. He received no psychiatric or psychological treatment. The claimant has no psychotic symptoms and does not need a structured living arrangement." (PageID.40.) That is a sufficient basis on which to discount Dr. Waldron's rather conclusory statements. Nor does Dr. Zhao's note on a "Loan Discharge Application: Total and Permanent Disability" regarding Plaintiff's depression contradict those findings, as that statement is from 2004. (PageID.329; *see also* PageID.64-65.)

On this record, the ALJ sufficiently explained his determination to give little weight to Dr. Waldron's conclusory opinions.

### III. Adjudication of Fault as to Overpayment

Plaintiff argues that he appealed to the ALJ the issue of whether he willfully and knowingly concealed information that caused an overpayment of benefits, specifically information about his own self-employment income and social security disability benefits that were paid to his spouse.

10

(PageID.721-23; *see also* PageID.142, 144-50.) As a result of that finding, the Social Security Administration assesses an additional penalty. (PageID.146, 152-55.) Plaintiff requested a hearing before an ALJ on that issue on July 12, 2017. (PageID.140.) In a letter dated December 8, 2017, to the Office of Disability Adjudication and Review (ODAR), Plaintiff asked whether the issues related to failure to report other income would be adjudicated at the upcoming hearing or at a subsequent hearing. (PageID.203.) On December 12, 2017, ALJ Blatnik responded in a letter, stating that the upcoming hearing would address only the issue of whether cessation of disability benefits was correct and noted that the overpayment issue would "be addressed in a future proceeding." (PageID.209.)

At the hearing on April 12, 2018, the ALJ noted that there were "a couple of pending matters" before the Administration, including alleged overpayment of benefits and the cessation issue, which were "scheduled to be heard" on that date. (PageID.49.) He stated that he had not reviewed the overpayment case significantly, noting that it appeared to be a complicated matter, and suggested that the overpayment and administrative sanctions issues be addressed in a separate proceeding. (PageID.49-50.) Plaintiff agreed, noting that he had also raised the issue related to continued benefits under Section 1619. (PageID.49-50.) At the end of the hearing, the ALJ noted that they would reschedule the overpayment case for a future date. (PageID.83.)

Plaintiff submitted additional medical evidence after the first hearing, so the ALJ conducted a supplemental hearing on August 14, 2018. (PageID.87.) At that hearing, the ALJ again specifically noted the purpose of the hearing was to supplement the record related to continued eligibility for SSI benefits. (PageID.87.) Plaintiff again raised the question of eligibility for Medicaid pursuant to Section 1619(b). (PageID.89-91.) He and the ALJ also discussed his position on the overpayment and administrative sanctions issue. (PageID.101-07.) However, the

11

ALJ stated that he did not "know that all of that is necessarily before [him] right now in this proceeding." (PageID.107.) Plaintiff agreed: "Well, no, it's not." (*Id.*)

As of the status conference held before this Court on August 12, 2020, the parties averred that the ALJ had not held a hearing, and the matter was still pending. (*See also* PageID.757, 761.) At the status conference, the Commissioner represented that Plaintiff is entitled to a hearing on that issue and that that is in process. (*See also* PageID.761.)

Based on the above, the issue of whether Plaintiff was at fault in the Social Security Administration's overpayment of benefits has not been adjudicated to a final decision. As the Commissioner notes, the ALJ was not required to consolidate these issues. 20 C.F.R. § 416.1452. Plaintiff remains entitled to a hearing on his appeal of that issue before the agency and it is, therefore, not ripe for review in this Court. 42 U.S.C. § 405(g).

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Dated: August 17, 2020        /s/ Sally J. Berens
                              SALLY J. BERENS
                              U.S. Magistrate Judge